UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHANNES HIRAM,

      Petitioner,                                              14-CR-184
                                                                         22-CV-974
                                                                         DECISION & ORDER
      v.

UNITED STATES OF AMERICA,

      Respondent.

_____


On June 21, 2016, the petitioner, Johannes Hiram, pleaded guilty to one count of possessing child pornography, Docket Item 46 at 1, and on November 21, 2016, this Court sentenced him to 188 months in prison, Docket Item 61.  Hiram now moves under 28 U.S.C. § 2255 to vacate his judgment of conviction based on allegations that the government withheld exculpatory evidence and that his counsel was ineffective.  Docket Item 78 at ¶¶ 16-26.[1]  For the following reasons, the Court denies the motion.


## BACKGROUND

On October 1, 2015, Hiram was charged in a superseding indictment with three counts of knowingly possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2).  Docket Item 28.  The charges involved child pornography on "a Seagate hard drive," "a Western Digital hard drive," and "an Attache thumb drive."  *Id.* at 1-3.  Hiram pleaded guilty to the first count, which related only to the Seagate hard drive, in exchange for the government's dismissing counts two and

_____

[1] All citations in this decision and order are to Hiram's criminal case, 14-cr-184, and page numbers in docket citations refer to ECF pagination.

three.  Docket Item 46 at ¶¶ 1, 18.  Hiram's attorney at the time was Criminal Justice Act Panel Attorney Thomas J. Eoannou.[2]  *See id.* at 12.

In his plea agreement, Hiram agreed that there was a factual basis for his guilty plea, that he "knowingly possess[ed] images of child pornography on a Seagate hard drive," and that "[t]hese images had been transmitted to [him] . . . via the Internet." Docket Item 46 at ¶ 6a.  The government agreed not to oppose a two-level downward adjustment of Hiram's offense level under United States Sentencing Guidelines ("Guidelines" or "USSG") § 3E1.1(a) due to his acceptance of responsibility and to move for an additional one-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(b).  Docket Item 46 at ¶ 11.  The plea agreement contemplated that based on his resulting offense level of 33 and his Criminal History Category of II, Hiram's Guidelines range would be 151 to 188 months in prison.  *Id.* at ¶ 13.  Without the three-level downward adjustment for acceptance of responsibility, Hiram's Guidelines range on count one would have been 210-262 months, USSG Ch. 5, Pt. A, with a statutory maximum of 240 months, 18 U.S.C. § 2252A(b)(2).

According to his plea agreement, Hiram "underst[ood] that Title 18, United States Code, Section 3742[,] affords a defendant a limited right to appeal the sentence imposed."  Docket Item 46 at ¶ 20.  But he "knowingly waive[d] the right to appeal and collaterally attack any component of a sentence imposed by the Court which f[ell] within or [wa]s less than the [agreed-to Guidelines] range . . . notwithstanding the manner in which the Court determine[d] the sentence."  *Id.*  Furthermore, Hiram "underst[ood] that

---

[2] Beginning on June 16, 2014, Assistant Federal Public Defender Kimberly A. Schechter represented Hiram.  *See* Minute Entry dated June 16, 2014.  On January 11, 2016, after Hiram requested new counsel, the Court assigned Eoannou to represent him.  Docket Items 36 and 38.

by agreeing not to collaterally attack the sentence, [he was] waiving the right to challenge the sentence" even if "in the future [he] bec[ame] aware of previously unknown facts or a change in the law which [he] believe[d] would justify a decrease in [his] sentence." *Id.* at ¶ 21.

During the plea colloquy on June 21, 2016, this Court questioned Hiram extensively under oath to ensure that he was proceeding knowingly and voluntarily. *See generally* Docket Item 83. Hiram swore that he was pleading guilty "voluntarily and of [his] own free will." *Id.* at 13-14. He agreed that he "underst[oo]d all of [his] rights]" and that he did not "need any more time to talk to [his] lawyer about them." *Id.* at 10-11. Specifically, Hiram affirmed that he "underst[oo]d that by entering into th[e] plea agreement and entering a plea of guilty, [he was] giving up [his] right to appeal or collaterally attack all or part of the Court's sentence as long as the sentence [wa]s within or less than the [G]uidelines range . . . of up to 188 months." *Id.* at 36. And he agreed that he understood that he was "giving up [his] right to challenge [his] sentence even if in the future [he] learn[ed] facts that [he] d[id not] know now that he th[ought] would justify a lesser sentence." *Id.* Hiram also affirmed that he had "discuss[ed] giving up [his] right to appeal with [his] lawyer" and "based on that discussion and having considered the issue, [that he] agree[d] to give up [his] right to appeal on the terms" that the Court had stated. *Id.*

Hiram also testified that he was "pleading guilty because [he] did the things that the plea agreement says [he] did and that are charged in the superseding indictment." *Id.* at 26. He confirmed that he was "satisfied with the representation that [] Eoannou ha[d] provided to [him]," he "believe[d] that [Eoannou had] fully considered any

defense [he] may have [had] to the charges," and he believed that Eoannou had "fully advised [him] about this matter." *Id.* at 39.

Following Hiram's plea, the United States Probation Office prepared a presentence investigation report ("PSR"). Docket Item 63. The PSR noted that Hiram had prior convictions for attempted sexual abuse in 2014 based on an incident involving a ten-year-old girl and for injury to a child in 2001 based on conduct that included "touch[ing the] private parts" of girls who were ages four, six, and nine. *Id.* at ¶¶ 59, 61. The PSR also said that the Seagate hard drive—the drive involved in count one—had 756 image files depicting child pornography, and that the laptop and thumb drive involved in the dismissed counts each had additional child pornography as well as nude images of Hiram. *Id.* at ¶¶ 11-15. The PSR agreed with the Guidelines range that the plea agreement had calculated. *Id.* at ¶ 69.

This Court sentenced Hiram on November 16, 2016. *See* Docket Item 84. Consistent with Hiram's plea agreement and the PSR, this Court calculated his Guidelines range as 151 to 188 months and sentenced him to the high end of that range—188 months in prison. *See* Docket Item 84 at 10, 23-24. This Court explained its reasons for choosing that sentence in considerable detail, recognizing the harshness of "the sentencing guidelines for child pornography" but emphasizing the several times that Hiram had abused children between the ages of four and fifteen years old and his two prior convictions "for a sexual child-related offense." *See id.* at 30-33.

During the sentencing hearing, Hiram said that he had received a copy of the PSR, that his attorney had explained it to him, and that Hiram understood it. *Id.* at 4. In

response to this Court's question about whether he "want[ed] to contest or change anything in the report," Hiram answered, "No, sir." *Id.* at 4-5.

After imposing the sentence, this Court told Hiram that he had a statutory right to appeal under certain circumstances, that Hiram had waived some of his rights to appeal in his plea agreement, and that waivers like these "are generally enforceable." *Id.* at 36. But the Court explained that "if you believe that the waiver is unenforceable for some reason, you can present that theory to an appellate court" and advised Hiram that he had 14 days to file a notice of appeal. *Id.* at 36-37. The government then moved to dismiss the second and third counts of the superseding indictment, and this Court granted that motion. *Id.* at 37.

Hiram did not appeal. But on November 7, 2022, almost six years after he was sentenced, Hiram filed a pro se motion to compel the government to disclose exculpatory and impeachment material under *Brady v. Maryland* and *Giglio v. United States*. Docket Item 68. Because it was not clear from his motion why Hiram requested that material and under what statute he intended to proceed, this Court advised Hiram that his motion would be construed as a petition under 28 U.S.C. § 2255 unless he told the Court otherwise. Docket Item 70 at 1. Hiram then moved for the appointment of counsel, Docket Item 71, and the Court assigned Criminal Justice Act Panel Attorney Justin D. Ginter to represent him, Docket Item 73.

Six days after the Court assigned Ginter, Hiram submitted a supplement to his motion to compel as well as a pro se section 2255 motion. Docket Items 75 and 76. This Court presumes that Hiram had not received its order assigning Ginter before Hiram submitted those filings. Counsel for both sides then informally agreed that newly

assigned counsel for Hiram should have an opportunity to submit supplemental briefing on the section 2255 motion, and Hiram, through his newly appointed attorney, filed an amended motion on July 17, 2023.[3]  Docket Item 78.  In that motion, Hiram argued that the government had withheld exculpatory evidence and that his counsel was ineffective. *Id.*  The government then responded, Docket Item 80, and Hiram replied, Docket Item 81.

The Court then ordered Eoannou to respond to some of Hiram's assertions,[4] *see* Docket Item 82, and Eoannou filed a response under seal describing relevant events in his representation of Hiram,[5] Docket Item 86.  Eoannou detailed the investigative steps he took involving the computer at issue in count one and the communications he had with Hiram about his right to appeal.  *See id.*  The government submitted a

---

[3] The Court treats that amended motion as Hiram's section 2255 petition.

[4] Although Hiram argues that both Schechter and Eoannou were ineffective for failing to investigate, Docket Item 78 at ¶¶ 19-20 and 22-23, Eoannou was Hiram's attorney for the six months before Hiram's change of plea hearing and through his sentencing.  It is clear from this timeline that Eoannou was the attorney who would have advised Hiram about his plea and would have been involved in filing any potential notice of appeal.

[5] This Court shared Eoannou's response with Hiram's current attorney, Ginter, who objected to providing portions of Eoannou's response to the government on the basis of the attorney-client privilege.  *See* Docket Items 85 and 87.  But the Court found that "[e]verything that Hiram identifies as privileged in Eoannou's response is relevant to Hiram's claims of ineffective assistance of counsel, and Hiram therefore has waived any claim of privilege with respect to those communications."  Docket Item 85.  For that reason, this Court shared Eoannou's response with the government attorneys on this case.  *See id.*

Eoannou's original response was in the form of a signed letter.  *See* Docket Item 86.  This Court later ordered Eoannou to resubmit his response in the form of an affidavit, Docket Item 93, and Eoannou did so on November 6, 2024, Docket Item 94. The sworn affidavit is substantively identical to the letter response.

supplemental response, Docket Item 90, and Hiram then submitted a supplemental

reply, Docket Item 92.

## DISCUSSION

Hiram seeks relief under 28 U.S.C. § 2255, which provides:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  A court may dismiss a section 2255 motion without first

conducting a hearing if the motion and record "conclusively show" that the petitioner is

not entitled to the relief he seeks.  *Id.* § 2255(b).

Hiram's section 2255 motion claims that the government withheld exculpatory

evidence and that his counsel was ineffective for not investigating the case, not giving

Hiram an opportunity to object to his presentence investigation report, and not filing a

notice of appeal at Hiram's request.  Docket Item 78 at ¶¶ 16-26.

## I.    STATUTE OF LIMITATIONS

Hiram's motion appears to be outside the statute of limitations.  Under 28 U.S.C.

§ 2255(f), he had until December 2017 to file his motion.  *See id.* (one-year statute of

limitations runs from date when judgment of conviction became final); *Moshier v. United*

*States*, 402 F.3d 116, 118 (2d Cir. 2005) (unappealed judgment is final when time for

filing direct appeal expires); Fed. R. App. P. 4(b) (notice of appeal due within 14 days of

entry of judgment).

Hiram argues that this Court should extend the statute of limitations based on equitable tolling due to his former counsel's "lack of communication" and due to "the struggles of the COVID pandemic and his mental health."  Docket Item 78 at ¶¶ 6-15. As part of this argument, Hiram alleges that he asked Eoannou to send him a copy of his case file as early as May 2017.  *See id.* at ¶ 9; Docket Item 78-1 at 1.  Hiram also notes that he moved to compel Eoannou to surrender the case file on May 8, 2019, and that "in this motion [] Hiram expressed his intent and desire to file a [s]ection 2255 petition."  Docket Item 78 at ¶ 9.  Hiram received the file in August 2019.  Docket Item 75 at 11.

Because Hiram's section 2255 motion fails on other grounds, the Court assumes without deciding that equitable tolling applies[6] and does not decide the motion on statute of limitations grounds.

## II.    HIRAM'S APPEAL WAIVER

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is [presumptively] enforceable."  *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016); *see Cook v. United States*, 84 F.4th 118, 122 (2d Cir. 2023).  In fact, if such waivers are not enforced, the promise not to appeal "becomes meaningless and would cease to have value as a bargaining chip in the hands of defendants."  *Cook*, 84 F.4th at 122 (citing *United States v. Yemitan*, 70 F.3d 746, 748 (2d Cir. 1995)).

---

[6] The government argues that Hiram has failed to meet the requirements for equitable tolling.  Docket Item 80 at 5-9.

"[E]xceptions to the presumption of the enforceability of a waiver . . . occupy a very circumscribed area of [the Second Circuit's] jurisprudence." *United States v. Gomez-Perez*, 215 F.3d 315, 319 (2d Cir. 2000). More specifically, the Second Circuit has articulated four grounds to find an appeal waiver to be unenforceable:

> (1) where the "waiver was not made knowingly, voluntarily, and competently[";] (2) where the sentence was "based on constitutionally impermissible factors, such as ethnic, racial[,] or other prohibited biases[";] (3) where the government breached the agreement containing the waiver; and (4) where the district court "failed to enunciate any rationale for the defendant's sentence."

*United States v. Burden*, 860 F.3d 45, 51 (2d Cir. 2017) (quoting *Gomez-Perez*, 215 F.3d at 319).

An ineffective assistance of counsel claim "challenging 'the constitutionality of the *process* by which he waived [his right to appeal]'" is one way a petitioner can demonstrate that his plea was involuntary and uninformed. *See Parisi v. United States*, 529 F.3d 134, 138 (2d Cir. 2008) (per curiam) (alteration in original) (quoting *United States v. Hernandez*, 242 F.3d 110, 113 (2d Cir. 2001)); *see also United States v. Lloyd*, 901 F.3d 111, 124 (2d Cir. 2018) (explaining that a defendant's "guilty plea [is] invalid and his appeal waiver [is] unenforceable if he prevail[s] on his claim that he received constitutionally ineffective assistance of counsel during his plea proceedings"). That is because a claim "challenging the attorney's *advice* about [the defendant's] bargaining position . . . connect[s] the knowing and voluntary nature of the defendant's plea decision with the attorney's conduct." *Parisi*, 529 F.3d at 139.

Another way that a petitioner can challenge the validity of his guilty plea is by demonstrating "impermissible conduct by state agents." *See United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (quoting *Brady v. United States*, 397 U.S. 742, 757

(1970)).  For example, "where prosecutors have withheld favorable material evidence, 'even a guilty plea that was "knowing" and "intelligent" may be vulnerable to challenge.'" *Id.* (quoting *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir. 1988)).

Hiram's plea agreement included a waiver of his right to appeal or collaterally attack a sentence that was within the Guidelines range.  *See* Docket Item 46 at ¶ 20. Hiram agreed that the waiver would apply even if he learned new facts that he thought would justify a lower sentence.  *See id.* at ¶ 21.  Hiram's motion does not acknowledge his plea waiver, nor does it attempt to explain why the plea waiver should not apply to his claims involving conduct that predated the plea.  *See generally* Docket Item 78.

## III.    EXCULPATORY EVIDENCE

Hiram argues that "his counsel was not made privy to all of the pertinent exculpatory evidence that the defense was entitled to under *Brady v. Maryland*, 373 U.S. 83, 87 (1963)[,] and *Giglio v. United States*, 405 U.S. 150, 154-[]55 (1972), and was therefore unable to properly confront [] Hiram's accusers and present a defense." Docket Item 78 at ¶ 16.  He says that "new impeaching and exculpatory evidence was presented to him while incarcerated."  *Id.* at ¶ 18.  "Specifically, [he] continues to maintain that the computer that was seized from his residence belonged to" someone named Sean Perez and that Hiram neither turned it on nor knew of its contents.  *Id.* Hiram also says that he hired a private investigator who "years after his conviction" told Hiram that "[someone named] Rachel Khoury was contacted through the computer in question" and Hiram "continues to maintain that he has never met . . . nor has he ever had any contact with her."  *Id.*  He says that this makes Khoury a "key witness."  *Id.*

"To the extent that the prosecutor knows of material evidence favorable to the defendant in a criminal prosecution, the government has a due process obligation to disclose that evidence to the defendant." *Avellino*, 136 F.3d at 255. And, as explained above, a guilty plea—even one that is knowing and voluntary—may be vulnerable to challenge if prosecutors have withheld favorable material evidence. *Id.*

But "speculative, conclusory[,] and unsupported[ *Brady* claims] must be rejected." *Franza v. Stinson*, 58 F. Supp. 2d 124, 154 (S.D.N.Y. 1999) (citing *Avellino*, 136 F.3d at 261). And to establish a *Brady* violation, a defendant must show that the government suppressed favorable evidence that was material, *Brady*, 373 U.S. at 87, which means that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," *United States v. Bagley*, 473 U.S. 667, 682 (1985). Moreover, "[e]vidence is not 'suppressed'" within the meaning of *Brady* "if the defendant . . . knew or should have known . . . the essential facts permitting him to take advantage of [that] evidence." *United States v. LeRoy*, 687 F.2d 610, 618 (2d Cir. 1982) (internal citations omitted). In other words, there is no suppression if the defense had "actual possession of or ready access" to the information. *See United States v. Esposito*, 834 F.2d 272, 275-76 (2d Cir. 1987).

Hiram's claims fail because he has not identified any evidence that the government suppressed. Eoannou has sworn that he reviewed the computer data, Docket Item 94 at ¶ 16, and Hiram does not specifically identify any disputed material that the government withheld, *see generally* Docket Item 78. Hiram's argument boils down to an assertion that there must be a *Brady* violation because he is innocent, which

is the type of "speculative, conclusory[,] and unsupported" claim that this Court must reject. *See Franza*, 58 F. Supp. 2d at 154.

Moreover, none of Hiram's theories about the computer are new. According to Hiram, he unwittingly wound up with the child pornography because Perez gave him "several scrap computers and a box of things to hold on to while [Perez] went back to prison." *See* Docket Item 78 at ¶ 21. If this is true, Hiram knew about the computer's origins well before he entered his guilty plea. And Hiram said that he told his counsel all about this. *See id.* at ¶ 23; Docket Item 94 at ¶ 11. So Hiram and his attorney knew the essential facts allowing him to take advantage of evidence about the computer's ownership. *See LeRoy*, 687 F.2d at 618.

Hiram's claim about a witness does not support his *Brady* argument either. Although Hiram suggests that the government improperly suppressed that witness's existence, Docket Item 78 at ¶ 18, he also contends that an FBI report mentioned her twice, Docket Item 81 at ¶ 8. In fact, Hiram submitted a page of that FBI report and other records to this Court and asserted that defense counsel "had this information in their files." *See* Docket Item 75 at 10, 30 (capitalization omitted). Presumably, defense counsel had the report because the government turned it over. And regardless of how defense counsel acquired it, counsel's possession of the report forecloses any argument about its suppression. *See Esposito*, 834 F.2d at 275-76.

In sum, Hiram's arguments that the government suppressed exculpatory evidence fail. It appears that Hiram's real complaint is not about suppression by the government but about the effectiveness of his defense counsel, an issue that the Court turns to next.

IV.    INEFFECTIVE ASSISTANCE OF COUNSEL

To prove ineffective assistance of counsel, petitioners must demonstrate that (1) their attorneys' "representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the[ir] defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

Under the first prong, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner may overcome this presumption by showing "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citing *Strickland*, 466 U.S. at 688-89). In considering whether counsel "failed to exercise the skills and diligence that a reasonably competent attorney would provide under similar circumstances," *Boria v. Keane*, 99 F.3d 492, 496 (2d Cir. 1996) (emphasis omitted), courts look to the totality of the circumstances, are "highly deferential," and make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 688-89.

Under the second prong, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In the context of a guilty plea, the prejudice prong requires the defendant to "show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." *United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005). That is, a defendant must show that "the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012). A defendant may make this showing by "producing both a sworn affidavit or testimony stating that he would have accepted or

13

rejected a plea agreement but for his counsel's deficient performance and also some additional 'objective evidence' supporting his claim." *United States v. Frederick*, 526 F. App'x 91, 93 (2d Cir. 2013) (summary order) (quoting *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)).

### A.  Opportunity to Object to Presentence Investigation Report

Hiram says that he did not get an opportunity to object to the PSR and that his counsel was ineffective for not giving him that opportunity.  Docket Item 78 at ¶ 24.  To the extent that Hiram is seeking to contest the report now, his waiver of his right to appeal or collaterally attack his sentence bars claims about the report.  *See United States v. Elliott*, 2020 WL 2513519, at *1 (E.D.N.Y May 15, 2020) (explaining that waiver of right to appeal or to file a section 2255 petition waives right to challenge sentence based on purported error in PSR).  Hiram's sentence was within the Guidelines range; therefore, he waived his right to appeal or collaterally attack it.  *See* Docket Item 46 at ¶ 20.

What is more, when this Court directly asked Hiram whether he wanted to contest or change anything in the PSR, Hiram said "no," Docket Item 84 at 4-5, so Hiram's contention that he "was not given an opportunity to object to anything that was written in the [PSR]," Docket Item 78 at ¶ 24, is simply incorrect.  And Hiram does not attempt to connect the issue about objecting to the PSR to the knowing or voluntary nature of his plea, nor does the Court perceive such a connection.  So Hiram has not shown the ineffective assistance of counsel in connection with his ability to object to the PSR.

### B.    Advice in the Plea-Bargaining Process

Hiram also complains that his counsel was ineffective for failing to investigate the ownership of the computer and an alleged potential witness.  Docket Item 78 at ¶¶ 19-23.  That claim may circumvent Hiram's collateral attack waiver by suggesting that his counsel was ineffective because he failed to investigate but still advised Hiram to plead guilty.  *See id.* at ¶ 26.

In the affidavit that Eoannou submitted to this Court, he described his investigation into the computer and the witness.  Docket Item 94.  He explained that there were nude photos of Hiram "on one if not more of the computers" and that when Hiram was arrested, he admitted to police that he was aware of pornography on the thumb drive and that "he had photographed a 10[-]year[-]old girl partially naked and acted inappropriately[,] which was what initiated the investigation."  *Id.* at ¶¶ 10, 12.  Eoannou told Hiram that, given this context, it would be difficult to prevail.  *Id.* at ¶ 13.

Eoannou also tried to corroborate Hiram's contentions about Perez, including by trying to find a woman who Hiram believed might say that the computers belonged to Perez, by reviewing the computer data, and by asking the government for *Brady* material about Perez.  *Id.* at ¶¶ 14, 16, 17.  Eoannou's attempts were unsuccessful:  He could not locate the woman; he found no reference to Perez in the computer data; and the government told him that there was no *Brady* material involving Perez.  *Id.*

Eoannou believed that "without corroboration the only way [Hiram] could advance this defense would be to testify on his own behalf, which [Eoannou] highly recommended against."  *Id.* at ¶ 18.  Eoannou "explained [that Hiram] may very well 'open the door' to suppressed evidence and be cross-examined relative to his previous convictions and inconsistent statements, and his conflicting version[s] of events."  *Id.*

15

Eoannou "conveyed [his] concerns to [] Hiram [about] the potential increased sentence if convicted after trial" and ultimately advised Hiram against pursuing the strategy of saying that the child pornography belonged to someone else. *Id.* at ¶ 19.

Eoannou's investigation and reasoned advice clearly were "within the wide range of reasonable professional assistance."[7] *Strickland*, 466 U.S. at 689. Indeed, Eoannou's concern about the possibility that Hiram could receive a higher sentence after trial was well founded because Hiram faced up to 240 months on each count, with a Guidelines range starting at 210 months, while his plea deal capped the Guidelines at 188 months and gave him the right to appeal a sentence of more than that.[8] *Compare* 18 U.S.C. § 2252A(b)(2), *and* USSG Ch. 5, Pt. A, *with* Docket Item 46 at ¶¶ 13-14.

Further, Hiram's own statements—sworn statements during his plea colloquy that "carry a strong presumption of verity," *see Blackledge v. Allison*, 431 U.S. 63, 74 (1977)—bolster the point. Hiram stated under oath that he was satisfied with Eoannou's

---

[7] In his supplemental reply, Hiram submitted notes that Eoannou wrote for Hiram to use at his sentencing. *See* Docket Item 92-1. Hiram suggests that these notes evidence Eoannou's "preconceived beliefs that [] Hiram was guilty." Docket Item 92 at ¶ 13. But there is no reason to think that Eoannou made these notes until after Hiram's guilty plea, and there is nothing nefarious about an attorney's helping his client to make a statement at sentencing.

[8] On October 9, 2015, Judge Richard J. Arcara adopted a Report and Recommendation of Judge H. Kenneth Schroeder, Jr., thereby granting Hiram's motion to suppress evidence seized from Hiram's home on March 19, 2014. *See* Docket Item 29; Docket Item 22 at 10, 16. This ruling suppressed the thumb drive—related to count three—but not the two hard drives—related to counts one and two. *See* Docket Item 22 at 3, 5; Docket Item 28 at 1-2. Neither the government nor Hiram mention the suppression order in their section 2255 briefing. To the extent that the suppression ruling rendered count three nonviable, this Court finds that this ruling does not change its analysis because each count carried the same potential maximum sentence, and Hiram pleaded guilty to count one in exchange for dismissal of count two and for a Guidelines sentence at least 52 months less than the statutory maximum on each count.

representation, that he believed Eoannou fully considered any defenses he may have, and that he decided to plead guilty voluntarily.  Docket Item 83 at 13-14, 39.  Hiram has not overcome the presumption that he was being truthful when he made these statements, which contradict his current position.  Moreover, there was strong evidence of his guilt, including his own admissions as well as the computers found in his home with child pornography—at least one with both child pornography and nude photos of himself.  *See* Docket Item 94 at ¶¶ 12-13, 19.  Eoannou presented these facts in his affidavit, *id.*, and Hiram did not address them in his motion or reply, *see generally* Docket Items 78 and 81.  Given this strong evidence of Hiram's guilt, it is not "reasonabl[y] probab[le]" that, given additional investigation, Hiram would not have pleaded guilty.  *See Arteca*, 411 F.3d at 320.

### C.   Hiram's Request to Appeal

Finally, Hiram has not shown that his counsel was ineffective for failing to file a notice of appeal.

The Second Circuit "take[s] very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal, even after a waiver appears to bar appeal."  *Campusano v. United States*, 442 F.3d 770, 775 (2d Cir. 2006).  Counsel is deemed ineffective if counsel fails to file a notice of appeal in spite of a defendant's "specific instruction" to do so.  *Id.* at 773 (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000)); *see United States v. Moreno-Rivera*, 472 F.3d 49, 52 (2d Cir. 2006).  This is true even when the defendant has entered into a valid appeal waiver.  *Campusano*, 442 F.3d at 771-72, 777.

The district court must engage in fact-finding to determine whether the defendant specifically requested an appeal. *See id.* at 776. But the court has discretion to decide whether to conduct a testimonial hearing. *See Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001). Indeed, courts need not hold an evidentiary hearing "where both parties have filed affidavits and thus 'the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions.'" *Kapelioujnyi v. United States*, 779 F. Supp. 2d 250, 253 (E.D.N.Y. 2009) (quoting *Chang*, 250 F.3d at 86, *aff'd*, 422 F. App'x 25 (2d Cir. 2011)).

Hiram asserts that "[a]fter being sentenced, he informed [] Eoannou that he wanted to appeal his conviction and sentence." Docket Item 78 at ¶ 25. He also says that he "was never made aware of his right to appeal," and that "Eoannou failed to inform [] Hiram of his rights and . . . failed to file a [n]otice of [a]ppeal." *Id.* Eoannou says that "[d]uring several reviews of the plea agreement with [] Hiram[,] it was explained to [Hiram] that he had a limited right to appeal"; that Eoannou did not tell Hiram that he had no right to appeal; and that Hiram "did not instruct [Eoannou] to file a [n]otice of [a]ppeal." Docket Item 94 at ¶¶ 21-22.

As explained above, this Court has the discretion to determine whether an evidentiary hearing is necessary to make a factual determination about whether the petitioner asked his counsel to appeal. *See Chang*, 250 F.3d at 86 (explaining that a "district court may use methods under [s]ection 2255 to expand the record without conducting a full-blown testimonial hearing" (citing *Blackledge*, 431 U.S. at 81-82)). In cases where the district court determines that an evidentiary "hearing would not offer any reasonable chance of altering its view of the facts," it is within the "court's discretion

to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would . . . result[] from a full testimonial hearing." *Id.*; *see also Florez v. United States*, 2007 WL 162764, at *4 (E.D.N.Y. Jan. 18, 2007) (finding that "a full testimonial hearing [wa]s unnecessary" because the court had reviewed "the papers submitted by the parties, including a detailed affidavit" from the defendant's attorney).

After careful review of Hiram's and Eoannou's submissions, this Court finds that a full testimonial hearing "would add little or nothing to the written submissions." *See Chang*, 250 F.3d at 86; *United States v. Delgado*, 2022 WL 4396627, at *5 (S.D.N.Y. Sept. 23, 2022) (finding that no evidentiary hearing was necessary where "[t]he credible assertions in counsel's sworn statement undermine[d the petitioner's] self-serving assertion that he specifically instructed defense counsel to file an appeal"). Eoannou's affidavit is more credible than Hiram's belated and self-serving letters and assertions that conflict with statements he made under oath during his plea colloquy.

For example, Hiram says that he did not know about his limited right to appeal, *see* Docket Item 78 at ¶ 25, but he certainly did know about that right. Even if Eoannou's sworn statement that he explained that right to Hiram is false, *see* Docket Item 94 at ¶ 21, this Court explicitly explained it to Hiram at the sentencing hearing. More specifically, the Court told Hiram that he had "a statutory right to appeal [his] sentence" and that if he wanted "to attempt to appeal some issue" that he believed survived his waiver in the plea agreement, he had to "file a notice of appeal within 14 days," Docket Item 84 at 36-37. Furthermore, Hiram's insistence that he both did not

know about his right to appeal and that he asked his attorney to appeal is inconsistent and not credible.  *See* Docket Item 78 at ¶ 25.

The Court also credits Eoannou's assertion that Hiram never asked Eoannou to file a notice of appeal on his behalf.  Eoannou unequivocally says that Hiram "did not instruct [him] to file a [n]otice of [a]ppeal," *see* Docket Item 94 at ¶ 22, while as the government correctly notes, "[Hiram] does not state when or how he made [a] request [to appeal]," *see* Docket Item 90 at 14.  Instead of addressing that point in his reply, Hiram makes the same conclusory assertion that he "instructed [] Eoannou to file a [n]otice of [a]ppeal," without saying when or how.  *See* Docket Item 92 at ¶ 17.  "[Hiram] had an opportunity to provide details and support his claim that he requested his counsel to file an appeal, yet [he] failed to do so.  In such circumstances, the Court may conclude . . . that no such request was made."  *See Kapelioujnyi*, 779 F. Supp. 2d at 254 (citation and internal quotation marks omitted).

Moreover, Hiram has submitted letters that he sent to Eoannou, but those letters do not support his contention that he asked Eoannou to appeal.  See Docket Items 78-1, 78-2, 78-3, and 78-4.  The earliest letter is from May 2, 2017, more than five months after Hiram's sentencing and well outside the time for filing a direct appeal.  *See* Docket Item 78-1 and Docket Item 78 at ¶ 9.  In that letter, Hiram merely updated his address and requested a "complete copy" of his file; he neither purported to follow up about the appeal that he now says he requested, nor did he instruct Eoannou to file an appeal.  *Id.* (capitalization omitted).

To the extent that Hiram contends that he asked Eoannou to file a section 2255 motion, this Court again agrees with the government that while there is evidence that

Hiram asked Eoannou for his case file, there is no evidence that he asked Eoannou to file a section 2255 motion. *See* Docket Item 78 at ¶ 9 (noting that Hiram expressed "his intent and desire" to file a section 2255 petition in a May 8, 2019, motion); Docket Item 90 at 14-16; Docket Items 78-1, 78-2, 78-3, 78-4. Again, Hiram had an opportunity to provide details supporting his assertion that he asked Eoannou to file a section 2255 motion, but he did not do so.

So while the failure to follow a client's instructions to file a notice of appeal constitutes ineffective assistance of counsel, there was no such failure here.

## **CONCLUSION**

For the reasons set forth above, Hiram's motion to vacate his judgment of conviction under 28 U.S.C. § 2255, Docket Item 78, is DENIED; his petition in Case No. 22-cv-974 (W.D.N.Y. 2022) is DISMISSED; and the Clerk of the Court shall close that case.

The Court hereby certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this decision and order would not be taken in good faith and therefore denies leave to appeal as a poor person. *Coppedge v. United States*, 369 U.S. 438 (1962). The Court also certifies under 28 U.S.C. § 2253(c)(2) that because the issues raised here are not the type of issues that a court could resolve in a different manner, and because these issues are not debatable among jurists of reason, the petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court denies a certificate of appealability.

Hiram must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within 60 days of the date of this decision and order. *See Williams v. United States*, 984 F.2d 28, 30 (2d Cir. 1993) (citing Fed. R. App. P. 4(a)(1)). Requests to proceed on appeal as a poor person must be filed with the United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated:   December 27, 2024

       Buffalo, New York


*/s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE